COMMONWEALTH *VS.* FRANCISCO SUAREZ
(and a companion case[1]).

No. 01-P-1527.

Suffolk. April 4, 2003. - August 29, 2003.

Present: PORADA, KASS, & GREENBERG, JJ.

*Controlled Substances. Practice, Criminal,* Challenge to jurors, Jury and jurors, Instructions to jury, Severance, Dismissal. *Jury and Jurors. Accessory and Principal. Joint Enterprise. Evidence,* Joint enterprise. *Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Probable cause. *Probable Cause.*

At the criminal trial of a Hispanic defendant, the prosecutor's peremptory challenge of one juror with a Hispanic-sounding surname was not sufficient, on the defendant's objection, to make out a prima facie showing of impropriety; moreover, even assuming that the juror was Hispanic, the record at trial did not disclose that the prosecutor was engaged in excluding members of a discrete group or that it was likely that individuals were being excluded solely on the basis of their membership in a group. [113-115]

Ample evidence existed at a criminal trial to convict a defendant either as a principal or as a joint venturer of trafficking in cocaine transported by another into the defendant's apartment. [115-116]

At the trial of codefendants on indictments charging trafficking in cocaine, the judge's instructions on joint venture, viewed as a whole, did not create a substantial risk of a miscarriage of justice with regard to one defendant, where the instructions made clear that each indictment was to be viewed separately and that the defendant could be convicted as a joint venturer on a specific indictment if he engaged in a joint venture, with one or more of the other codefendants or persons identified, to traffic in the cocaine transported into an apartment by the person identified in that particular indictment. [116-117]

A Superior Court judge did not err in denying a criminal defendant's motion to suppress evidence obtained as a result of a search warrant based on statements from two confidential informants, where the affidavit accompanying the application for the search warrant sufficiently established the informants' basis of knowledge and veracity. [117-118]

The judge at a criminal trial of multiple defendants did not abuse her discretion in denying one defendant's motion to sever. [118]

A Superior Court judge did not err in denying a criminal defendant's motion to dismiss an indictment charging trafficking in cocaine, where the evidence

---

[1]Commonwealth *vs.* Amparo Arango.

presented to the grand jury was sufficient to show probable cause that the defendant was engaged with another codefendant as a joint venturer in the illegal distribution of drugs and that a third codefendant was making a delivery of drugs to the others for subsequent distribution. [118-119]

At the trial of codefendants on indictments charging trafficking in cocaine, the judge erred in instructing the jury that one defendant could be found guilty of trafficking on a theory of individual liability, where the evidence, although sufficient to convict her under a theory of joint venture, was insufficient to establish that she constructively possessed cocaine found in another codefendant's backpack; where the verdict slip did not identify the theory on which the jury found the defendant guilty of trafficking in cocaine, the error required reversal. [119-120]

INDICTMENTS found and returned in the Superior Court Department on April 9, 1999.

A motion to dismiss was heard by *Diane M. Kottmyer*, J., and a pretrial motion to suppress evidence was also considered by her; a motion to sever was heard by *Elizabeth B. Donovan*, J., and the cases were tried before her.

*Jose A. Espinosa* for Francisco Suarez.

*Edward E. Eliot* for Amparo Arango.

*Susanne Levsen Reardon*, Assistant District Attorney, for the Commonwealth.

PORADA, J. A Suffolk county grand jury indicted the defendants, Francisco Suarez and Amparo Arango, each on charges of trafficking in 200 grams or more of cocaine transported into 71 Parker Street, Chelsea, by Maria Ortiz; trafficking in 200 grams or more of cocaine transported into 71 Parker Street, Chelsea, by Julio Mejia; and conspiracy to traffic in 200 grams or more of cocaine in violation of G. L. c. 94C, § 40. Before trial, the defendant Arango moved to dismiss the indictments and the defendant Suarez moved to suppress evidence seized in the execution of a search warrant and to sever his trial from that of another codefendant, Maria Ortiz. Those motions were denied. A jury in the Superior Court returned not guilty verdicts on the indictments charging Suarez and Arango with trafficking in 200 grams or more of cocaine transported into 71 Parker Street by Mejia but found the defendants guilty of trafficking in 200 grams or more of cocaine transported into 71 Parker Street by Ortiz. The conspiracy indictments were filed with the consent of the defendants.

On appeal from their convictions, the defendants claim multiple errors. The defendant Suarez claims that the trial judge erred (1) in ruling that the prosecutor's exercise of a peremptory challenge was not motivated by improper ethnic considerations, (2) in denying his motions for a required finding of not guilty, and (3) in her instructions to the jury on both joint venture and principal liability. Suarez also contends that the motion judges erred in denying his motion to suppress evidence seized in the execution of a search warrant and in denying his motion to sever his trial from that of codefendant Ortiz. The defendant Arango argues that the motion judge erred in denying her motion to dismiss the indictments and that the trial judge erred in denying her motion for a required finding of not guilty and in instructing the jury on both joint venture and individual liability. Arango also argues that her trial counsel was ineffective in not objecting to the judge's instructions and not requesting severance of her trial from that of the other defendants. We agree that the judge should not have instructed the jury on both joint venture and principal liability, as there was insufficient evidence to support the latter. We therefore reverse her conviction. We affirm the conviction of Suarez.

We address the defendants' claims of error.

1. *Suarez's claims.*

a. *Peremptory challenge.* During the course of the jury impanelment, defense counsel objected to the prosecutor's exercise of a peremptory challenge of juror Diana Lugo. Defense counsel stated that "in this venire I haven't seen any Hispanic individuals. Based on the last name of this person, Ms. Lugo, she seems to be of Hispanic origin. . . . . I would like the court to take note of the fact that my client — all the defendants here are Hispanic." The judge responded: "There is no indication whether she is Hispanic or Italian. So I am not even going to inquire of the Commonwealth . . . ." Defense counsel contends that the judge failed to follow the procedures mandated by the Supreme Judicial Court to determine whether the challenge was proper and, thus, the defendant was denied his right to be tried by a jury selected on the basis of nondiscriminatory criteria as required by the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of

Rights. Specifically, the defense contends that the judge should have requested the prosecutor to state her reason for exercising the challenge.

Peremptory challenges are presumed to be proper, *Commonwealth* v. *Burnett*, 418 Mass. 769, 770 (1994), but the presumption is rebuttable on a showing that (1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership within a group. *Commonwealth* v. *Soares*, 377 Mass. 461, 489-490, cert. denied, 444 U.S. 881 (1979). *Commonwealth* v. *Maldonado*, 439 Mass. 460, 463 (2003). Further, "the challenge of a single prospective juror within a protected class could, in some circumstances, constitute a prima facie case of impropriety." *Commonwealth* v. *Fryar*, 414 Mass. 732, 738 (1993), *S.C.*, 425 Mass. 237, cert. denied, 522 U.S. 1033 (1997). Faced with a claim of improper exercise of a peremptory challenge, a judge is first required to determine whether the requisite prima facie showing of impropriety has been made and, if so, must then specifically determine whether the reasons advanced by the exercising party are bona fide or a mere sham. *Commonwealth* v. *Burnett*, 418 Mass. at 771. *Commonwealth* v. *Maldonado*, 439 Mass. at 463-464. Implicit in the judge's response in this case is a finding that a prima facie showing of impropriety had not been made.

We will not overturn the judge's ruling if there is a sound basis in the record for her ruling. Here, the defendant bore the burden of establishing a prima facie case of impropriety by demonstrating that the juror in question was Hispanic. Apparently the defendant sought to meet his burden by drawing the inference from the juror's surname. This can suffice. *Commonwealth* v. *Carleton*, 418 Mass. 773, 775 (1994). However, because it was not clear from the surname whether the juror was Hispanic or Italian, the defendant should have done more to meet his burden, such as asking the judge to make an inquiry of the juror. This he failed to do.

Even if we were to assume that juror Lugo was Hispanic, the record does not disclose that a pattern of conduct had developed in which the prosecutor was ostensibly challenging jurors based on their membership in a discrete group or that there was a

likelihood that jurors were being excluded from the jury solely on the basis of their group membership. Prior to the prosecutor's challenge to juror Lugo, the prosecutor had not exercised a challenge with respect to the two other jurors selected for the panel whose surnames of Demaina and Clemente indicated that they might be Hispanic.[2] In addition, prior to the prosecutor's exercise of her peremptory challenge of juror Lugo, counsel for a codefendant disclosed to the court that he had a number of clients by the name of Lugo who were being housed as prisoners at the Nashua Street jail. The judge declined to excuse juror Lugo for cause based on that information. The prosecutor then challenged juror Lugo. The judge's determination, therefore, that the defense had not made a prima facie showing of improper exercise of a peremptory challenge is supported by the record on the ground that neither a pattern of excluding jurors of a discrete group nor a likelihood that they were excluded based on their membership in a discrete group was shown.

b. *Motions for a required finding of not guilty.* Viewed in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), there was ample evidence to convict Suarez as a principal or as a joint venturer in trafficking in the cocaine transported into the apartment by Maria Ortiz. The Commonwealth presented evidence that, after months of surveillance of the activities of Suarez by the police, they executed a search warrant for the premises at 71 Parker Street in Chelsea. When they entered the apartment they found Suarez with two other codefendants, Jose Fernandez and Ramon Perez, seated in the living room and the defendant Arango in the kitchen. On a table in front of Suarez were a number of cell phones, a license plate, beepers, a large amount of cash, and a ledger containing notations of drug sales. On the couch next to a codefendant the police found more cell phones and beepers. In the kitchen area, the police also found cutting agents used in the preparation of drugs for distribution. Suarez admitted that he lived in the apartment.

The police did not find any drugs in the apartment, but dur-

---

[2]Juror Demaina was challenged by defendant Suarez. Juror Clemente was challenged by a codefendant, Jose Fernandez.

ing the execution of the warrant two people, Julio Mejia and Maria Ortiz, entered the apartment with large amounts of cocaine in their possession. Mejia testified as a government witness. He stated that Suarez had asked him to deliver a package to a third person, who never showed up, and that he was simply returning the package containing cocaine to Suarez but that he did not know it contained drugs. He also testified that Suarez admitted to him that he was in the business of selling drugs and that the other people in the apartment worked for him. He also testified that on one occasion in his presence Suarez had asked the codefendant Fernandez to get a "piece" from the third-floor apartment, and that he understood "piece" to mean drugs. Maria Ortiz testified that she lived in the third-floor apartment, that on the day of the execution of the search warrant Suarez had asked her to retrieve a backpack he had left in her apartment, and that she was simply delivering the backpack to the defendant but did not know that it contained cocaine. In the backpack was a package that contained more than 200 grams of cocaine. The police also executed a search warrant for the third-floor apartment and found cocaine in the apartment. This evidence was sufficient for a fact finder to conclude beyond a reasonable doubt that Suarez either as principal or as a joint venturer possessed the cocaine, weighing more than 200 grams, in Ortiz's backpack with the intent to distribute it.

c. *Jury instructions.* Suarez contends that the judge's instructions on joint venture were confusing and conflicting because they allegedly permitted him to be convicted as a joint venturer if the jury found that he was engaged in a joint venture with one or more of the defendants for either the cocaine transported into the apartment by Ortiz or that transported by Mejia. Suarez is arguing essentially that an instruction on joint venture liability should have been limited to each individual transportation of cocaine and should have included the person who transported it. Suarez did not object to the judge's instructions at trial. Thus, our review is based on whether the judge's instructions created a substantial risk of a miscarriage of justice.

Viewing the judge's instructions as a whole, see *Commonwealth* v. *Sarmanian,* 426 Mass. 405, 408 (1998), we think

the instructions made clear that each indictment was to be viewed separately and that Suarez could be convicted as a joint venturer on a specific indictment if he engaged in a joint venture, with one or more of the other codefendants or persons identified, to traffic in the cocaine transported into the apartment by the person identified in that particular indictment. Our conclusion is supported by the very fact that the jury found all of the defendants not guilty of trafficking in the cocaine transported into the apartment by Mejia and only Suarez and Arango guilty of trafficking in the cocaine transported into the apartment by Ortiz.[3]

d. *Motion to suppress.* Suarez argues that the motion judge erred in denying his motion to suppress evidence on the ground that the basis of the informants' knowledge and veracity set forth in the affidavit, coupled with the independent observations of Suarez's activities in the affidavit, were insufficient to establish probable cause. The application for the search warrant was accompanied by a forty-eight page affidavit detailing the police surveillance of Suarez's activities at 71 Parker Street in Chelsea, 349/351 Fenno Street in Revere, and 127 Chelsea Street in Everett over a period of several months. The affidavit contained information from two informants whose identities were known to the affiant. The basis of knowledge of confidential informant one was established by his allegation that he had purchased cocaine from Suarez and by his detailed description of the drug operation run by Suarez with corroboration of those details by the police surveillance. *Commonwealth* v. *Cast,* 407 Mass. 891, 897-898 (1990). His veracity was established by the fact that in the past the informant had furnished information that had led to the arrest of other defendants for narcotics violations and the seizure of narcotics in those arrests. *Commonwealth* v. *Perez-Baez,* 410 Mass. 43, 46 (1991). The basis of knowledge of confidential informant two was established by the fact that he alleged that he had purchased cocaine from Suarez and his workers and by the details furnished by him about the defendant's drug operation that were corrobative of information furnished by confidential informant one. *Commonwealth* v. *Rice,* 47 Mass. App. Ct. 586, 588-589 (1999).

---

[3]Fernandez and Ortiz were found not guilty on both indictments.

Further, police corroboration of those details was sufficient to establish confidential informant two's veracity or reliability. The judge did not err in denying the motion to suppress.

e. *Motion to sever.* Suarez argues that his trial should have been severed from that of Maria Ortiz based upon her statement that Suarez asked her to retrieve his backpack from her apartment. Severance is required only where the defense of a defendant and that of a codefendant are "antagonistic to the point of being mutually exclusive," or where "the prejudice resulting from a joint trial is so compelling that it prevents [the] defendant from obtaining a fair trial." *Commonwealth* v. *Stephens*, 44 Mass. App. Ct. 940, 944 (1998), quoting from *Commonwealth* v. *Dickerson*, 17 Mass. App. Ct. 960 (1983). Here, Ortiz did not testify that Suarez was selling drugs or that Suarez knew that the back pack contained cocaine. It was still possible on the evidence presented for Suarez to have been acquitted. Consequently, the judge did not abuse her discretion in denying the motion to sever.

2. *Arango's claims.*

a. *Motion to dismiss.* The defendant Arango argues that the motion judge erred in denying her motion to dismiss the indictment. For a grand jury to indict a defendant, the grand jury must hear sufficient evidence to establish the identity of the accused and probable cause to arrest her. *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982). *Commonwealth* v. *Coonan*, 428 Mass. 823, 825 (1999).

We summarize the evidence presented to the grand jury on the indictment. A State police trooper testified that when he entered the apartment Arango was seated in the kitchen with a cutting agent used in distributing cocaine in plain view. Nearby the trooper found another cutting agent used in distributing drugs. He also testified to finding in the apartment other accoutrements of drug distribution activity, such as cell phones, beepers, a drug ledger, and cash. A government witness testified that Arango worked for Suarez, whom he identified as a drug dealer. Other evidence disclosed that Arango at first admitted that she lived in the apartment but then denied it; that Suarez was present in the apartment and admitted that he lived there; and that while police were conducting the search of the apart-

ment, Ortiz entered the apartment carrying a backpack. A search of the backpack disclosed 1,000 grams of cocaine hidden in it.

Arango argues that although this evidence showed that she was present in the apartment when Ortiz entered, the evidence was insufficient to tie her to the drugs contained in Ortiz's backpack, and therefore, the indictment should have been dismissed. The test by which the indictment is measured is the sufficiency of the evidence for probable cause to arrest. That standard has been defined as whether the grand jury heard "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." *Commonwealth* v. *McCarthy*, 385 Mass. at 163. Probable cause is defined as "more than mere suspicion but something less than evidence sufficient to warrant a conviction." *Commonwealth* v. *Roman*, 414 Mass. 642, 643 (1993).

Here, we think the evidence went beyond showing simply Arango's presence in the apartment and supported an inference of Arango's involvement with the drugs in Ortiz's backpack. One could reasonably infer from the presence in the apartment of cutting agents and other accoutrements used for drug distribution that Arango was engaged with Suarez as a joint venturer in the illegal distribution of drugs and that Ortiz was making a delivery of drugs to Suarez and Arango for the subsequent distribution of the same. As the evidence was sufficient to show probable cause, the motion to dismiss was properly denied.

b. *Judge's instructions.* The defendant claims that the judge erred in instructing the jury that Arango could be found guilty of trafficking on a theory of individual liability. We agree.

Although there was sufficient evidence to convict her under a theory of joint venture — such as her admission that she resided in the apartment which contained accoutrements of drug dealing and her subsequent denial of her residence therein after Ortiz entered the apartment, from which one could infer that she knew Ortiz was making a delivery of drugs, and the testimony by a government witness that she was part of the drug distribution ring conducted by Suarez, who had requested Ortiz to deliver the backpack containing the cocaine to the apartment —

the evidence was insufficient to establish that she had the ability to exercise dominion or control over the cocaine in Ortiz's backpack; without such proof of constructive possession, her conviction of trafficking in cocaine on a theory of individual liability could not be sustained.[4] See *Commonwealth* v. *Hernandez*, 439 Mass. 688, 690-693 (2003). Because the verdict slip did not identify the theory on which the jury found her guilty of this offense, the guilty verdict on the charge of trafficking in cocaine must be set aside and the judgment reversed.[5]

On the indictment charging Amparo Arango with trafficking in 200 grams or more of cocaine transported into 71 Parker Street by Maria Ortiz, the judgment is reversed and the verdict is set aside. On the indictment charging Francisco Suarez with trafficking in 200 grams or more of cocaine, the judgment is affirmed.

*So ordered.*

---

[4]The defendant Arango also claims that the judge erred in denying her motion for a required finding of not guilty. Although the defendant Arango was entitled to a required finding on the theory of principal liability, she was not, for the reason explicated above, entitled to a required finding on the theory of joint venture. Cf. *Commonwealth* v. *Hernandez*, 439 Mass. 688, 690-693 (2003).

[5]Because we are reversing Arango's conviction, we need not discuss her other claims of error.